CARL K. WITHERS, commissioner of banking and insurance of the State of New Jersey, petitioner-respondent,

*v.*

MECHANICS TRUST COMPANY et al., defendants, and WILLIAM F. THIELE et al., defendants-appellants.

[Argued May 25th, 1937.   Decided September 22d, 1937.]

*Mr. Joseph V. Riggio, Mr. Alexander Seclow* and *Mr. William E. Holmwood,* for the defendants-appellants.

*Mr. Aaron A. Melniker,* for the petitioner-respondent.

The opinion of the court was delivered by

DONGES, J.

Petitioner-respondent is commissioner of banking and insurance of the State of New Jersey, and is in possession, pursuant to the provisions of chapter 255 of the laws of 1931 (*P. L. 1931 p. 641*), of the property and business of Mechanics Trust Company, a trust company organized under the laws of this state. The five appellants were depositors in said trust company, having a total of $15,900 out of somewhat more than $5,600,000 of deposits at the time the commissioner took possession of the company.

Chapter 255 of the laws of 1931 provides, among other things, that:

"Upon taking possession of the property and business of such trust company the commissioner is authorized to collect moneys due to such trust company, and do such other acts as are necessary to conserve its assets and business, and shall proceed to liquidate the affairs thereof as hereinafter provided. The commissioner is empowered and authorized, in the name of such trust company, to demand, sue for, collect, receive and take into his possession all the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, papers, choses in action, bills, notes and property of every description of such trust company, and in his discretion to compound and settle with any debtor or creditor of such trust company, or with persons having possession of its property or in any way responsible at law or in equity to such trust company, upon such terms and conditions and in such manner as he shall deem just and beneficial to such trust company, * * * and the commissioner shall have power in the name of such trust company to sell, convey and assign all or any part of the said estate, rights and interests, including bills, notes and choses in action, * * *. The commissioner may in his discretion apply to the court of chancery for instructions or directions touching the sale of any property of such trust company or the compounding of debts or claims."

The commissioner found the trust company in possession of certain obligations of various persons secured by bonds of Transport Company, a corporation of this state, having title to lands in the city of Bayonne, fronting upon New York bay. Harry B. Dembe holds title to other lands on the bay front, on which the trust company holds a mortgage in the sum of $50,000.

The trust company, as trustee, held a mortgage on bay front lands of Transport Company, against which a number of bonds were issued and are now held by various persons.

The commissioner is desirous of exchanging the obligations of Transport Company and Dembe for securities of Central District, Incorporated, a corporation, which is to operate a railroad terminal in Bayonne. The project contemplates the acquisition by the city of Bayonne of title to the necessary lands in order that the terminal may be constructed as a public work aided by federal funds, and the leasing thereof to The Central District, Incorporated, for a period of fifty years.

The commissioner, pursuant to the provision of the statute, applied to the court of chancery for instructions or directions concerning the matter. Reference to a special master was made, and, after hearing, he reported recommending that the authorization sought be given. Exceptions were filed thereto, and after consideration thereof, the order appealed from was entered, which order approved the recommendation of the master and authorized the carrying out of the proposed exchange of securities, and the cancellation of the Dembe and Transport Company mortgages as proposed.

The proposed capitalization of The Central District, Incorporated, is as follows: $1,200,000 of fifteen year bonds, $5,500,000 of twenty-five year, five per cent. income debenture bonds, nineteen thousand shares of six per cent. preferred stock, one hundred thousand shares of common stock.

Interest on the debenture bonds is to be cumulative only to the extent it is earned over and above operating expenses in any year.

The securities to be surrendered fall into three classes:

First, there are $203,000 principal amount of Transport Company bonds held as collateral in the loan accounts of General Land Company, Carl A. Ruhlmann, T. Morris Ten Broeck, Frederick C. Earl and the estate of De Witt Van Buskirk. It is proposed that these bonds be exchanged for income debentures of The Central District, Incorporated, at the ratio of approximately $1,940 principal amount of said income debentures and approximately seven and seven-tenths shares of common stock of The Central District, Incorporated, for each $1,000 principal amount of Transport Company bonds.

Second, certain promissory notes made by Transport Company, and endorsed by Bush Terminal Company, and certain promissory notes made by Bush Terminal Company, and endorsed by Transport Company, aggregating $123,700.

The proposal is to release the claim against Bush Terminal Company, in consideration of $570,000 principal amount of Transport Company bonds and four hundred and eighty shares of Transport Company stock and the assignment of certain claims by Bush Terminal Company against Transport Company, General Land Company and the estate of De Witt Van Buskirk, aggregating approximately $250,000, and to exchange said $570,000 principal amount of Transport Company bonds, four hundred and eighty shares of Transport Company stock and the assigned claims for income debentures and common stock of The Central District, Incorporated, in the proportion or ratio of approximately $1,950 principal amount of said income debentures and seven and seven-tenths shares of common stock for each $1,000 principal amount of Transport Company bonds. It is further proposed to enter into an agreement, reserving to The Central District, Incorporated, the right to purchase these securities within six months from the date of exchange upon payment to Mechanics Trust Company of the amount of the trust company's claim against Bush Terminal, plus six per cent. interest thereon to the date of the order under review, and four per cent. from the date of such exchange to the date of the exercise of the option.

As to these two proposals, it will be observed that the value of the securities and the claim against Bush Terminal to be surrendered by the trust company depend upon the value of the bonds and stock of Transport Company and the claim against Bush Terminal.

So far as the Transport Company is concerned, it was in evidence that it is hopelessly insolvent, that the property covered by the mortgage to secure the .bonds has been sold to the city of Bayonne for unpaid taxes amounting to approximately $500,000. Unless the property is redeemed by the payment of this sum, with interest and costs, the property is lost, and with it the $2,000,000 mortgage given to secure the bonds, which bonds, in such event, become worthless. It further appeared that there was no prospect of sale of the lands, except in connection with the proposed terminal, and that even if the commissioner were able to redeem the lands, it would not be advisable to do so. It was, therefore, deemed advisable, in view of all of the circumstances, that the bonds of no value be exchanged for securities that have, at least, a fair prospect of value.

One of the considerations leading the court of chancery to this conclusion was that the Central Railroad Company of New Jersey will enter into a guarantee with the city, lessor, for the payment of $500,000 of rent during the first three years of the lease.

Further, as far as the claims against the debtors involved in the first proposal are concerned, they are not to be released from personal liability. It amounts to a substitution of one class of security for another class of security for their obligations.

As to the second proposal, involving the Bush Terminal Company, it appears that that corporation is now in trusteeship under section 77-B of the Bankruptcy act. Several plans of reorganization have been before the court for approval, but none has received approval. Under a pending plan, the trust company would receive the face amount of its claim, without interest, in preferred stock, to be issued in such amount as may be necessary to liquidate claims against the

debtor company, probably aggregating $2,500,000. This stock would be subsequent to existing mortgage obligations of approximately $9,000,000.

In view of the admitted hopeless insolvency of the Transport company and the uncertainty of efforts to reorganize Bush Terminal, it was deemed desirable by the commissioner, the special master and the vice-chancellor that the exchange of securities be accomplished.

The third proposition involving an exchange of securities involves a mortgage made by Harry B. Dembe and wife, for $50,000 on certain lands to be used in the terminal project. These lands have been sold to the city of Bayonne for unpaid taxes, in a sum in excess of $65,000. They are also subject to an amount, approximating $25,000, due to the State of New Jersey for a riparian grant. It thus appears that these lands are subject to liens, prior to the trust company, in excess of $90,000. The assessed value of the lands is $65,800. Dembe is further indebted to the trust company, either directly or indirectly, in the sum of approximately $85,000, making a total indebtedness of $135,000.

It is proposed to take over the Dembe property, involving, of course, cancellation of the mortgage, in exchange for $175,000 of securities, against which the tax liability of $65,000 and riparian grant cost of $25,000 are to be charged, and the balance of $85,000 to be paid to the trust company as follows: $20,000 in secured bonds of The Central District, Incorporated, and $65,000 of income debenture bonds of that corporation. Dembe is not released from personal liability on his other obligations, except to the extent of $4,500.

It appears that Dembe is insolvent, and his wife, who also signed the bond, is without financial responsibility. It again appeared to those heretofore dealing with the matter that it was desirable to exchange the security in hand for that offered.

The entire situation considered, we reach the conclusion that, as a matter of policy, the proposed plans are in the interest of the trust company and its creditors.

But appellants urge that there is no authority in the commissioner to make such exchanges, and that the court of

chancery erred in giving approval thereof. They insist that, however desirable the plan appears to be and however much the proposals would tempt an individual in the bank's position, or the bank, if solvent, the officer charged with the conservation of its assets has no duty and no power to exchange collateral for other collateral, but may surrender collateral or claims only for cash. They insist that, if the claims or collateral are not collectible from the debtors, there must be an offer thereof for the best cash price obtainable.

To this view, in the situation presently pending, we are unable to subscribe. The statute directs the commissioner not only "to collect moneys due to such trust company," but also, to "do such other acts as are necessary to conserve its assets and business," and "to compound and settle" claims of debtors and creditors, "upon such terms and conditions and in such manner as he shall deem just and beneficial to such trust company."

In performance of the duty imposed upon the commissioner, it would seem to require no argument to support the conclusion that the commissioner would be remiss in the duty to conserve the assets of the bank, if he refused to exchange collateral that is said, without contradiction, to have no value, for securities that have, at least, a probable value. If a debtor tendered government bonds for the Transport Company bonds, would anyone contend that the commissioner must decline such exchange? Would it not be properly said that he failed, in such situation, to conserve the assets? The only question then is as to the wisdom, in view of all of the circumstances, of the proffered plan to better the bank's position. Appellants offered no proof upon any of the questions involved. Upon the record before us, we cannot find support for any conclusion other than that reached in the court below.

Appellants urge that the present situation is controlled by *Moore* v. *Splitdorf Electrical Co., 114 N. J. Eq. 358.* That case is readily distinguishable from the present one. There the question was stated to be, whether "a minority holder of debenture bonds of the admittedly insolvent corporation

may be compelled against his will to surrender his debenture bonds and accept in lieu thereof stock in the new company without first being afforded the alternative of receiving his proportionate share of the proceeds of a conventional sale of all property of the old company."

In that case the proposed exchange was in liquidation of creditors' claims against the corporation by giving a preferred creditor common stock in another corporation to be created. Here the plan is merely to try to better the corporation's position in order that creditors may benefit upon liquidation. Creditors are not asked to accept any of the securities in satisfaction of their claims. The question here is merely whether the court of chancery should give approval to what appears to be an effort to conserve the assets of the trust company and thereby to increase the value of creditors' claims.

The other matter dealt with in the order appealed from is authorization to satisfy the mortgage, dated July 1st, 1929, securing the Transport Company bonds and to cancel the bonds issued thereunder, in which mortgage the trust company is named as trustee, terminating the trust company's duties as trustee thereunder, upon receiving the consent of the holders of all outstanding bonds secured by said mortgage, and upon deposit of such bonds or upon the deposit with the trust company of the principal sum and interest, in cash, for any bonds not so deposited.

No appeal is taken from this part of the order and there appears no objection thereto, inasmuch as consent of all interested parties is required, or, in lieu thereof, payment in full of their claims.

Upon the record submitted, the conclusion is that it is in the interest of the trust to authorize the commissioner to accept the several proposals submitted, and the order under review, therefore, will be affirmed.

BROGAN, CHIEF-JUSTICE. (Dissenting.)

I am unable to agree with the reasoning of the opinion for the majority since it seems to run counter to the opinion of

this court in *Moore* v. *Splitdorf Electrical Co., 114 N. J. Eq. 358.* The issue in that case is identical in principle with the issue here. In that case the complaining party was the holder of a debenture bond—a creditor. In this case the appellants have the status of creditors of the insolvent bank. The assets of the bank, whatever their value, are a trust fund for payment of creditors, and the rights of the appellants, contractual in essence, may not, in these circumstances, be impaired.

It is not perceived that the statute (chapter 255, *P. L. 1931*), confers authority upon the commissioner of banking and insurance to make the exchange of assets here exhibited against the will of those most interested in those assets, even though they be in the small minority. If such power were contained in the statute, its validity would be open to question upon very fundamental grounds. A creditor, in this situation, may not be compelled to accept that which is not legal tender, and these substituted bonds are not in that category.

Mr. Justices Case, Heher and Perskie are in accord with the view here expressed.

*For affirmance*—TRENCHARD, PARKER, LLOYD, BODINE, DONGES, DEAR, WELLS, WOLFSKEIL, RAFFERTY, COLE, JJ. 10.

*For reversal*—THE CHIEF-JUSTICE, CASE, HEHER, PERSKIE, JJ. 4.